**Merlin DOWNIE, Plaintiff–Appellant,**

v.

**INDEPENDENT DRIVERS ASSOCIATION PENSION PLAN, Defendant–Appellee.**

**No. 90–1119.**

United States Court of Appeals, Tenth Circuit.

June 5, 1991.

Timothy J. Parsons (David B. Seserman with him on the briefs) of Gorsuch, Kirgis, Campbell, Walker and Grover, Denver, Colo., for plaintiff-appellant.

James C. Ruh of Jensen Byrne Parsons Ruh & Tilton P.C., Denver, Colo., for defendant-appellee.

Before MOORE, SETH and ANDERSON, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

This case arises under the civil enforcement provisions of the Employee Retirement Income Security Act (ERISA). Plaintiff, Merlin Downie, appeals a portion of the equitable remedy fashioned by the district court under 29 U.S.C. § 1132(a)(3)(B). The court fashioned this remedy because it found the trustees of the defendant, Independent Drivers Association Pension Plan (Plan), had acted arbitrarily in revoking plaintiff's benefits and credits in the absence of proper notice that he would forfeit those entitlements for violation of the early retirement provisions of the Plan. The appealed portion of the court's remedy re-quires Mr. Downie to pay restitution to the Plan in exchange for restoration of his entitlements. Mr. Downie also appeals the court's denial of his claim for attorney fees and costs. We conclude the district court correctly ruled equitable relief was proper, but we remand for clarification of its judgment. Because the district court denied plaintiff's claim for attorney fees and costs without any findings, we are unable to determine whether it abused its discretion. We remand for findings and conclusions on that claim.

Mr. Downie has been a driver for the Yellow Cab Company in Denver since 1957. He has participated in the Plan since its inception in 1975, and there is no dispute that he is an eligible employee under its terms.

In June 1981, Mr. Downie elected to take advantage of the early retirement provisions of the Plan. At that time, he was advised that he could continue to work up to ninety-nine hours a month and still receive his monthly benefits of $78.09. On August 1, 1981, Mr. Downie received his first benefit payment.

For the next twenty-four months, Mr. Downie was fully retired and did not drive a cab or otherwise engage in covered employment. However, he encountered financial difficulties and on September 1, 1983, began driving a full schedule. It is undisputed that this return to full-time work violated the terms of the Plan; nevertheless, Mr. Downie continued to receive his full benefits of $78.09 until January 1, 1984.

In December 1983, the trustees discovered Mr. Downie's violation and ordered that his benefits be suspended for the months of January, February, and March 1984. Despite the suspension of benefits, Mr. Downie continued to work during that period. Then, in February 1984, the trustees notified Mr. Downie that they had decided to "discontinue permanently" his benefits and terminate all the service credits he had earned prior to his retirement in August 1981. Since January 1, 1984, Mr. Downie has worked, but he has been considered a

"new driver." Because of this classification, he has accumulated benefits and service credits as though he had initially commenced work on that day.

Mr. Downie filed this action seeking, among other relief, the restoration of his terminated benefits and service credits. The district court granted Mr. Downie's motion for summary judgment, holding that the absence of any notice in the Plan's Summary Description of the consequences of returning to work full-time violated the minimum notice requirements of ERISA. 29 U.S.C. § 1022(b).[1] The court concluded, therefore, that the trustees had acted arbitrarily and capriciously in deciding to "discontinue permanently" Mr. Downie's benefits and service credits. The Plan has not appealed these decisions.

Additionally, the court concluded the Plan's actions provided a basis for equitable relief under 29 U.S.C. § 1132(a)(3)(B). Thus, the court ordered the Plan to reinstate Mr. Downie's pension benefits as though he had not taken early retirement. Additionally, the court ordered:

> Defendants will restore to Plaintiff's pension records prior service credits that he had accrued as of December 31, 1983 and permit Plaintiff to retain additional service credits he has earned since Defendant Plan began treating him as a new driver on January 1, 1984.

Perceiving that Mr. Downie would achieve a "windfall" if he were allowed to retain retirement benefits paid to him in violation of the Plan, the court ordered him to pay restitution to the Plan. The court set the amount of restitution at $2,264.61, the entire amount of benefits received by Mr. Downie since the time of his early retirement. Without explanation, the court ordered the parties to bear their own costs and attorney fees.

██ We review the application of the district court's equitable remedy for abuse of discretion. *Keyes v. School Dist. No. 1, Denver, Colo.*, 895 F.2d 659, 665 (10th Cir.

1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 951, 112 L.Ed.2d 1040 (1991); *Wulf v. City of Wichita*, 883 F.2d 842, 873 (10th Cir. 1989). We see no such abuse in this case.

We agree explicitly with the decision of the district court to apply an equitable resolution to this case. Even Mr. Downie concedes he is not entitled to a windfall and that equity requires he not be permitted to retain benefits paid to him in violation of the Plan.[2] He contends, however, "it was inequitable for the district court to order [him] to repay all of the pension benefits he had received."

██ Although the Plan argues the district court "fashioned a remedy which gives Downie exactly what he would have received, without penalty, had he not violated the Plan Document by collecting pension benefits and then returning to full time status," we are unable to determine whether this result has been achieved. While the remedy was conceived to put the parties in the exact position they would have been on the day Mr. Downie took early retirement, the judgment may permit the Plan to come out ahead.

Had Mr. Downie not taken early retirement on August 1, 1981, he would have continued to earn service credits as long as he worked. Assuming for the purpose of equitable relief that Mr. Downie had worked until the date of the judgment, as the district court did, he would have accumulated service credits for twenty-seven months. Yet, we are uncertain whether the remedy provided by the district court requires restoration of the credits that would have been earned for the period of August 1, 1981, to January 1, 1984. The court mandated that the Plan restore the "prior service credits [plaintiff] had *accrued* as of December 31, 1983," but we are uncertain whether the court intended that Mr. Downie receive those credits he would have earned through continuous employment or that the Plan merely restore the service credits he earned prior to taking early retirement. If the court intended the former, we agree in full; but, if the

---

1. *See also* 29 C.F.R. § 2520.102–3(*l*) (1989).

2. Mr. Downie concedes he should refund $312.36.

court intended the latter, we do not believe full equity was achieved. If the district court did not intend that the Plan give Mr. Downie service credits for the twenty-four months he was actually retired in exchange for the restitution of benefits, the Plan gets favorable treatment.

Contrarily, if it was the court's intent that the Plan give plaintiff service credits for the period between August 1, 1981, and August 30, 1983, both sides would come out even. An equal exchange of restitution for service credits will fully return the parties to the status they held on August 1, 1981, and the restitution of benefits will be offset later by a corresponding increase in monthly benefits to be received by Mr. Downie upon his full retirement.

Having reached this point, we must add we also believe it was the district court's intent to achieve the full balance of equity. Yet, because the order is not absolutely clear to us, we are hesitant to so hold. We are, consequently, in a quandary that can only be resolved by the district court.

█ Finally, although Mr. Downie's complaint sought recovery of attorney fees and costs under 29 U.S.C. § 1132(g)(1), the court made no findings upon that claim. While there may be ample grounds upon which to deny relief, the absence of findings leaves us with no means by which to judge the exercise of the court's discretion. We are left with no course but to remand for those findings. *Gordon v. United States Steel Corp.*, 724 F.2d 106, 108–09 (10th Cir.1983).

We REMAND for clarification of the equitable remedy to either explicitly grant plaintiff restoration of service credits for the period of August 1, 1982, to January 1, 1984, or to reduce the order of restitution by the sum of the benefits plaintiff received between August 1, 1981, and September 1, 1983, without service credits for that period. We further REMAND for findings of fact and conclusions of law upon plaintiff's claim for attorney fees and costs.